IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CENTIMARK CORPORATION,

*Plaintiff,*

v.

THE TJX COMPANIES, INC *doing business as* MARSHALLS,

*Defendant.*

Civil Action No. 2:21-cv-914

Hon. William S. Stickman IV

## **MEMORANDUM OPINION**

WILLIAM S. STICKMAN IV, United States District Judge

This suit arises from the settlement of a negligence action in the Circuit Court of the Eleventh Judicial Circuit of Florida in and for Miami-Dade County. Two of the named defendants in the underlying lawsuit seek defense and indemnification from each other for costs expended in the litigation. Plaintiff CentiMark Corporation ("CentiMark") filed a complaint ("Complaint") against Defendant The TJX Companies, Inc. d/b/a Marshalls ("TJX") seeking declaratory relief that TJX be held to its alleged contractual obligation to defend and indemnify CentiMark for costs expended in the underlying litigation. (ECF No. 1-4). TJX brought a counterclaim against CentiMark in its answer ("Answer") asserting that CentiMark be held to the defense and indemnification language stated in TJX's own purchase order. (ECF No. 4). Both parties moved for summary judgment on the theory that their own documents governed the parties' relationship and thus, as a matter of law, each is entitled to defense and indemnification from the other. For the following reasons, both CentiMark's and TJX's motions for summary judgment will be denied.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

CentiMark is a commercial roofing business that transacts in various states.  (ECF No. 1-4, ¶ 1).  TJX owns and operates Marshalls retail stores throughout the United States.  (*Id.* ¶¶ 2–3).  TJX experienced leaks in the roof of its Marshalls store located at 13619 South Dixie Highway, Miami, Florida, 33176 ("South Dixie Marshalls").  (ECF No. 33, p. 6).  To remedy this problem, TJX hired CentiMark on various occasions to perform roofing repairs on the South Dixie Marshalls.  (*Id.* at 2, 6–7); (ECF No. 28, pp. 15–16); (ECF No. 34, pp. 35–107).

On or about June 13, 2019, Luis Venerio ("Venerio") claims to have slipped and fallen in the South Dixie Marshalls.  (ECF No. 33, p. 1); (ECF No. 28, p. 3).  Venerio filed a negligence suit in the Circuit Court of the Eleventh Judicial Circuit of Florida in and for Miami-Dade County against four defendants (the "Venerio suit"), two of which were TJX and CentiMark.  (ECF No. 33, p. 1); (ECF No. 28, p. 3).  TJX ultimately settled the Venerio suit for $197,500.00 and incurred $53,000.00 in litigation fees and expenses in the process.  (ECF No. 28, pp. 3, 6).  CentiMark was dismissed from the Venerio suit and did not contribute to its settlement.  (ECF No. 33, p. 1); (ECF No. 28, p. 3).  Despite its dismissal, CentiMark spent $94,451.95 in legal fees and expenses in its defense.  (ECF No. 33, p. 7); (ECF No. 34, pp. 770–816); (*see* ECF No. 28, p. 3).

The indemnity dispute presently before the Court centers around the circumstances of the request and performance of roofing repairs at the South Dixie Marshalls prior to Venerio's slip and fall on June 13, 2019.  TJX requested CentiMark to repair multiple ongoing leaks in the store's roof on or about April 16, 2019.  (ECF No. 1-4, ¶ 5); (ECF No. 4, Counterclaim ¶ 6).  A few weeks later, on or about May 4, 2019, Sokoria Nealy, a management representative of the South Dixie Marshalls, authorized the work set forth in CentiMark work authorization document number 1706209 (the "1706209 Work Authorization").  (ECF No. 34, pp. 64–66, 112); (ECF No. 28-1,

2

pp. 12–13, 17–18).  The 1706209 Work Authorization contained the following provisions as part

of its terms and conditions:

> Purchaser agrees that it has informed CentiMark of all current and non-CentiMark Corporation warranties in effect for the roof covered under this Agreement. Purchaser shall indemnify, protect and hold CentiMark harmless from any claims (including court costs and legal fees) damages, actions or injuries, or the termination of a non-CentiMark Corporation warranty, arising from the performance by CentiMark Corporation of these roofing services.

> The performance of the work contemplated by the Agreement shall be governed solely by the terms and conditions stated herein, and no other terms and conditions, order acknowledgment or purchase order or any other kind of documentation furnished by the customer shall be construed as an acceptance of any terms or conditions contained in such document which are inconsistent with the terms and conditions stated herein.

(ECF No. 34, p. 63); (ECF No. 28-1, p. 18); (ECF No. 33, pp. 2–3); (ECF No. 28, p. 2).  CentiMark

provided work authorizations to South Dixie Marshalls' management for their signature each time

it completed repairs on the roof, including when it performed work pursuant to the 1706209 Work

Authorization.  (*See* ECF No. 33, p. 2); (ECF No. 31, p. 1); (ECF No. 34, pp. 35, 46, 54, 64, 72,

80); (ECF No. 32, p. 6); (ECF No. 36, pp. 1–4); (ECF No. 28-1, pp. 12, 17, 95, 100, 194, 202, 227,

243, 252).

After the filing of the Venerio suit, CentiMark "demanded upon [TJX] to assume the

defense and indemnify [sic] of CentiMark at TJX's sole cost and expense" pursuant to the

provisions in the 1706209 Work Authorization's terms and conditions.  (ECF No. 1-4, ¶ 15).  TJX

did not respond to CentiMark's demand, and CentiMark initiated this declaratory judgment action

against TJX requesting "a declaration that [TJX be] required to assume the defense of CentiMark

in the [Venerio suit] and indemnify Venerio or other parties for any negligence ultimately

apportioned to CentiMark."  (*Id.* ¶ 21).  By enforcing this provision, CentiMark seeks to recover

3

the $94,451.95 in legal expenses it incurred during the underlying litigation.  (ECF No. 32, p. 3);
(ECF No. 33, p. 7).

In its Answer, TJX asserts a counterclaim against CentiMark, alleging that its own "Terms
and Conditions of Purchase Order" ("Purchase Order") is the contract controlling the parties'
transactional relationship, and thus TJX is entitled to defense and indemnification by CentiMark.
(ECF No. 4, Counterclaim ¶ 1); (ECF No. 28, p. 4).  The defense and indemnification language
that TJX seeks to enforce states:

> Seller shall defend, indemnify and hold harmless TJX and its customers, officers,
> directors, employees, and agents, from and against all third party claims to the
> extent that such claim arises out of or relates to the Seller's acts or omissions in
> connection with the Services. In the event of a claim by a third party, TJX or its
> legal representative shall promptly notify Seller in writing of any such claim or
> lawsuit arising out of or in connection with the Services and forward all related
> documents to the Seller. Seller shall defend any such case at its sole expense.

(ECF No. 28, pp. 5–6); (ECF No. 32, p. 9).  The Purchase Order additionally set forth that, by
"performing the services specified on this Purchase Order," CentiMark "agrees to the terms and
conditions herein." (*Id.* at 5).  It also states that "these Terms and Conditions of Purchase Order
shall govern the transactions contemplated hereby in all respects" and that "[a]ny different or
additional terms and conditions contained in Seller's acknowledgment form are hereby rejected
unless specifically agreed to in writing by an authorized representative of [TJX] or its relevant
affiliate or subsidiary … having authority to approve such change." (ECF No. 28, pp. 5–6); (ECF
No. 32, p. 9).  Pursuant to these provisions, TJX requests total damages of $250,500.00—
$53,000.00 in litigation fees and expenses incurred in its defense in the Venerio suit and
$197,500.00 paid as a settlement to resolve the underlying litigation.  (ECF No. 4, Counterclaim ¶
17); (ECF No. 28, p. 6).

The parties filed cross-motions for summary judgment, each asserting that the other is obligated to reimburse them for costs expended in the Venerio suit. (ECF No. 30); (ECF No. 31). CentiMark claims that the 1706209 Work Authorization governs the parties' transactional relationship, whereas TJX contends its Purchase Order controls. As such, the parties argue that the other is bound by their respective document's indemnification provisions stated within each's terms and conditions.

## II.    LEGAL STANDARD

Summary judgment is warranted if the Court is satisfied that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material if it must be decided to resolve the substantive claim or defense to which the motion is directed. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And there is a genuine dispute of material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The Court must view the evidence presented in the light most favorable to the nonmoving party. *Id.* at 255. It refrains from making credibility determinations or weighing the evidence. *Id.* "[R]eal questions about credibility, gaps in the evidence, and doubts as to the sufficiency of the movant's proof" will defeat a motion for summary judgment. *El v. Se. Pa. Transp. Auth.*, 479 F.3d 232, 238 (3d Cir. 2007).

"When both parties move for summary judgment, '[t]he court must rule on each party's motion on an individual and separate basis, determining for each side whether a judgment may be entered in accordance with the Rule 56 standard.'" *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 402 (3d Cir. 2016) (quoting 10A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2720 (3d ed. 2016)). Under the same rule, if upon review of a party's

motion for summary judgment, the court, viewing the evidence in the light most favorable to the nonmoving party, enters summary judgment for the moving party, the court may properly declare the opposing party's cross-motion for summary judgment as moot. *Beenick v. LeFebvre*, 684 F. App'x 200, 205–06 (3d Cir. 2017).

### III.   ANALYSIS

**A.  TJX judicially admitted that the 1706209 Work Authorization is a binding contract between the parties.**

A critical issue in deciding the cross-motions for summary judgment is determining the effective contract that governed the parties' relationship and obligations.  This issue is hotly disputed in the parties' papers.  CentiMark contends that the terms of its numerous work authorizations control.  (ECF No. 32, pp. 5–10).  TJX, on the other hand, denies that these work orders were ever validly executed because the South Dixie Marshalls branch manager did not have the authority to bind TJX to the defense and indemnification language included therein.  (ECF No. 36, pp. 3–5).  TJX contends that its own Purchase Order is the controlling agreement between the parties, pursuant to which TJX seeks defense and indemnification for expenses incurred in the Venerio suit.  (ECF No. 36, p. 5); (ECF No. 27, pp. 17–20).

The parties' cross-motions each point to contractual language, facts, and course of conduct to support their positions.  But, TJX admitted on two separate occasions that the 1706209 Work Authorization controlled their relationship.[1]  In light of these purported admissions, the Court ordered additional briefing under Federal Rule of Civil Procedure 56(f) on whether TJX had

---

[1] The Court finds that TJX admitted that the 1706209 Work Authorization was a valid contract and controlled the parties' relationship.  However, as explained herein, this admission can only extend to the work to which that work authorization relates.  Whether the 1706209 Work Authorization covers work on the area of the store from which the Venerio suit arose is a different issue.

judicially admitted this material fact, and if so, what effect the concession has on the resolution of the pending cross-motions. (ECF No. 45).

In its brief, TJX asserts that it has not judicially admitted that the 1706209 Work Authorization is a binding contract between the parties because TJX has consistently taken the position throughout this litigation that South Dixie Marshalls personnel only had the authority to "merely confirm[] that a CentiMark tech had been present and had presumably performed the work it had been asked to perform." (ECF No. 46, p. 3). Thus, TJX firmly reiterates that the authority granted to the local South Dixie Marshalls employees, including Sokoria Nealy, did not include the ability to bind TJX to the defense and indemnification language of any CentiMark work order. (*See id.*). Alternatively, TJX states that if it did admit this fact, the concession would have no effect on the pending motions because the defense and indemnification obligation only applies to CentiMark's "performance" of roofing services, which TJX contends CentiMark failed to provide. (*Id.* at 6). CentiMark responds that TJX has judicially admitted that the 1706209 Work Authorization controls. (ECF No. 47, p. 2).

Judicial admissions are concessions that are unequivocally made "in pleadings, stipulations [or the like] which do not have to be proven in the same litigation." *Anderson v. Comm'r*, 698 F.3d 160, 167 (3d Cir. 2012) (citation omitted). "To be binding, judicial admissions 'must be statements of fact that require evidentiary proof, not statements of legal theories.'" *Id.* (quoting *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 377 (3d Cir. 2007)). The inherent factual questions here are (1) which of the two documents (the Purchase Order or the 1706209 Work Authorization) controlled the parties' relationship[2], and (2) if the 1706209 Work Authorization controls, whether

_____

[2] As a general matter under Pennsylvania law, "[w]hen the evidence is in conflict as to whether the parties intended that a particular writing should constitute an enforcible contract, it is a question of fact whether a contract exists." *Yellow Run Coal Co. v. Alma-Elly-Yv Mines, Ltd.*, 426 A.2d

TJX gave its agent(s) at the South Dixie Marshalls the authority to bind it to the entire agreement.[3]

Here, TJX admitted on two separate occasions that the 1706209 Work Authorization controlled.

First, CentiMark alleges in its Complaint that "[o]n or about May 4, 2019, a management representative of the Defendant's store authorized the work set forth in the [1706209 Work Authorization] ... This document constitutes the contract between the parties." (ECF No. 1-4, ¶ 6). In its Answer, TJX fully admits the averments in the Complaint's paragraph 6 without denial. (ECF No. 4, ¶ 6; "Admitted."). This admission establishes a major fact of the case—what the parties viewed as a controlling contract that governed their respective performances thereunder. Therefore, the concession that the 1706209 Work Authorization "constitutes the contract between the parties" is not a legal theory and is instead an unequivocal judicial admission of a statement of fact to which TJX is bound. *See Anderson*, 698 F.3d at 167. It is, however, a question of fact as to what work the 1706209 Work Authorization covered.

TJX's judicial admission in its Answer is further bolstered by its subsequent and consistent admission in Defendants' Answers and Responses to Plaintiff's Request for Admissions. (ECF No. 34, pp. 108–117). Federal Rule of Civil Procedure 36(b) emphasizes that a party's answer to a written request to admit is "conclusively established." CentiMark requested TJX to admit or deny the following statement: "Admit that Exhibit A, the CentiMark work authorization, is signed by Sokia Neely [sic], who was manager of [the South Dixie Marshalls] and who was authorized to contract with CentiMark for the roof repairs described in work authorization number 1706209." (ECF No. 34, p. 112). TJX admitted the entire paragraph in response and only clarified the spelling

---

1152, 1154 (Pa. Super. 1981) (citing *Field v. Golden Triangle Broad, Inc.*, 305 A.2d 689 (Pa. 1973)).

[3] "The nature and extent of an agent's authority is a question of fact for the trier [of fact]." *Turner Hydraulics, Inc. v. Susquehanna Constr. Corp.*, 606 A.2d 532, 534–35 (Pa. Super. 1992) (citations omitted).

of the person's name and that the work CentiMark performed did not address the leak above the Ladies' Accessories Department. (*Id.*). Under Rule 36(b), the Court will hold TJX to its admission that its representative, Ms. Nealy, had the authority to contract with CentiMark. Accordingly, the Court finds that the 1706209 Work Authorization was validly executed by a person with proper authority and is the authoritative and controlling contract governing the parties' relationship. [4]

### B. There is a genuine issue of material fact regarding the work performed pursuant to the 1706209 Work Authorization and whether it is a factual cause of the injuries sustained in the underlying suit.

Even though the Court finds that the 1706209 Work Authorization is a binding contract, it is unclear from the record whether Venerio's injuries were caused by the roofing services CentiMark provided pursuant to this contract. In other words, reading the contract as a whole and giving its language plain meaning, there remains a dispute as to whether the scope of work CentiMark performed under the 1706209 Work Authorization was the factual cause of Venerio's slip and fall. Under the plain language of this work authorization, its indemnity provision only applies to the work performed subject to it. This critical issue forms the basis of the parties' respective positions on indemnification.

TJX argues that the roofing services under the 1706209 Work Authorization did not relate to the leaks in the Ladies' Accessories Department, resulting in the injuries litigated in the Venerio suit. (ECF No. 27, pp. 13–14, 16); (ECF No. 36, p. 6). Based on this, TJX asserts that the language

---

[4] Even if TJX's Purchase Order was a valid contract, which the Court does not find, the later agreed to 1706209 Work Authorization would fall in the exceptional language of the document's terms and conditions. The introduction of the terms and conditions states that "[a]ny different or additional terms and conditions contained in [CentiMark's] acknowledgment form are hereby rejected unless specifically agreed to in writing by an authorized representative of [TJX] … having authority to approve such change." (ECF No. 28, p. 5). As TJX admitted, Sokoria Nealy, a TJX representative, was authorized to contract with CentiMark and accordingly did so in writing by signing the 1706209 Work Authorization. (ECF No. 34, p. 112).

in the agreement "does not obligate TJX to cover CentiMark's omissions." (ECF No. 27, p. 16). CentiMark responds that there is no evidence in the record that it failed to provide any roofing services to TJX over the entire course of the parties' transactional relationship. (ECF No. 44, p. 7). Rather, the leaks in the South Dixie Marshalls's roof had been ongoing for years prior to CentiMark's services, as evidenced by North American Roofing's July 25, 2018, recommendation to replace the roof. (ECF No. 32, p. 18). CentiMark contends that it "could not be expected to change the situation [of the deteriorating roof] by attempting to patch ongoing leaks." (ECF No. 32, p. 19).

The 1706209 Work Authorization's terms and conditions circumscribe the parties' relationship to the work that was performed as described in the agreement. The opening sentence reads: "The scope of work is *limited to what is stated on the face herein*." (ECF No. 28-1, p. 18); (ECF No. 34, p. 36) (emphasis added). Another portion of the terms and conditions similarly confines the reach of the contract. The clause maintains:

> Purchaser agrees that it has informed CentiMark of all current and non-CentiMark Corporation warranties in effect for the roof covered under this Agreement. Purchaser shall indemnify, protect and hold CentiMark harmless from any claims (including court costs and legal fees) damages, actions or injuries, or the termination of a non-CentiMark Corporation warranty, arising from the performance by CentiMark Corporation *of these roofing services*.

(ECF No. 28-1, p. 18); (ECF No. 34, p. 36) (emphasis added). Assigning plain meaning to these provisions, CentiMark's potential liability related to the roofing services performed is limited by the scope of work explicitly set forth in the 1706209 Work Authorization. Accordingly, the provisions in the 1706209 Work Authorization cannot be read any broader in the indemnification context than they can be read as related to liability. Put differently, CentiMark can only seek defense and indemnification if the roofing services performed, as defined by the 1706209 Work Authorization's scope of work, was a factual cause of the injuries litigated in the Venerio suit.

The record before the Court does not clearly demonstrate this causal relationship. Instead, the record demonstrates substantial dispute as to whether, as a matter of fact, the work that CentiMark performed is related to the cause of Venerio's slip and fall. The 1706209 Work Authorization describes the repairs performed and/or the additional work recommended as "Two leak locations in front of store. Repaired one puncture and storm caulked one pipe." (ECF No. 28-1, p. 17); (ECF No. 34, p. 64). The corresponding invoice for the 1706209 Work Authorization does not provide any additional specificity and instead only reiterated that the CentiMark crew "[i]nvestigated leaks reported in front of store" as well as "found and repaired a puncture in the membrane and a storm pipe." (ECF No. 28-1, p. 10); (ECF No. 34, p. 67). The pictures accompanying the invoice also fail to paint any clearer of a picture. Looking at the images, where CentiMark alleges to have performed roofing services and where the ultimate slip and fall occurred, presents a genuine issue of material fact that cannot be resolved at summary judgment. (ECF No. 28-1, pp. 14–16, 148–49); (ECF No. 34, pp. 69–71). Such a factual determination will be left for a jury to decide.

If a jury finds that the work CentiMark performed fell outside the defined scope of work stated in the 1706209 Work Authorization, CentiMark cannot seek indemnification from TJX under the agreement. On the other hand, if it is factually determined that the roofing services provided were within the bounds of the contracted-for roofing work, TJX may have to indemnify CentiMark based on the language of the agreement's terms and conditions.

### C. The *Perry-Ruzzi* rule will not bar CentiMark from seeking indemnification from TJX.

The parties vehemently dispute as to whose negligence CentiMark seeks defense and indemnification from TJX. CentiMark asserts that it is claiming indemnification for TJX's negligence, not its own, because "[t]here is no evidence of any negligence on the part of CentiMark

in the underlying Florida action." (ECF No. 39, p. 2); (*see* ECF No. 32, pp. 12–13, 18–21). Rather, CentiMark states that it seeks indemnification "for having to defend against Venerio's claims resulting from the negligence of TJX." (ECF No. 39, p. 2). TJX responds arguing that CentiMark wants TJX to defend and indemnify it for CentiMark's own negligence. (ECF No. 36, p. 7); (ECF No. 27, pp. 10–11). TJX defines CentiMark's negligence as failing to "remed[y] roof leaks over the Ladies' Accessories Department on numerous occasions" and instead addressing other areas of the roof. (ECF No. 36, p. 12). Such omissions, TJX contends, do not obligate TJX to defend and indemnify CentiMark. (ECF No. 27, p. 16). Rather, the language in the 1706209 Work Authorization only requires defense and indemnification for CentiMark's actions. (*Id.*).

Pennsylvania courts apply the *Perry-Ruzzi* rule when a contract's language purportedly allows for an indemnitee to seek indemnification for its own negligent conduct. *Ruzzi v. Butler Petroleum Co.*, 588 A.2d 1, 4 (Pa. 1991) (citing *Perry v. Payne*, 66 A. 553 (Pa. 1907)). Under this rule, "an indemnity contract against personal injuries should not be construed to indemnify against the negligence of the indemnitee unless it is specific and expressed in unequivocal terms." *Hailey v. Baribault*, 2020 WL 7785575, at *7 (Pa. Super. Dec. 30, 2020); *see also Jacobs Constructors, Inc. v. NPS Energy Services, Inc.*, 264 F.3d 365, 371 (3d Cir. 2001) ("Under Pennsylvania law, it is well-established that indemnification for a party's own negligence will not be inferred and must be stated expressly, clearly, and unequivocally in an indemnity clause."). Thus, if a party does not clearly and unequivocally seek "to relieve itself of responsibility for its own negligence," the rule does not apply. *Mace v. Atl. Refin. Mktg. Corp.*, 785 A.2d 491, 495 (Pa. 2001).

Courts have interpreted this to mean that a party "merely charged with negligence," who is later "loosed of all tort responsibility in the underlying case," does not fall within the ambit of the *Perry-Ruzzi* rule. *Id.* at 495. In other words, the rule does not apply when a party is adjudicated

non-negligent.  *See Id.*  The Pennsylvania Supreme Court has further "held that when a party seeking indemnification has not failed to perform any of its obligations under the indemnity provision and is not seeking to relieve itself of responsibility stemming from its own conduct, the *Perry–Ruzzi* rule has no application." *IU N. Am., Inc. v. Gage Co.*, 2002 WL 1277327, at *8 (E.D. Pa. June 4, 2002) (citing *Mace*, 785 A.2d at 495–96).

Here, neither CentiMark nor TJX were adjudicated negligent or non-negligent in the Venerio suit—CentiMark was dismissed without prejudice, and TJX settled with Venerio prior to any adjudication on the merits.  (ECF No. 28, pp. 3, 6); (ECF No. 33, pp. 1–2).  The Court cannot automatically infer that TJX is negligent solely because of the settlement arrangement it reached with Venerio.  *Edison Learning, Inc. v. Sch. Dist. of Philadelphia*, 56 F. Supp. 3d 674, 686 (E.D. Pa. 2014) (citing *City of Pittsburgh v. Rue,* 393 A.2d 1066, 1068 (1978)).  And despite CentiMark's requests, neither can the Court view the combination of a dismissal without prejudice, no contribution to the settlement of the underlying suit, and the Florida statute of limitations running out as an adjudication of CentiMark's non-negligence.  (*See* ECF No. 32, pp. 15–16, 19–20); (ECF No. 39, pp. 8–9).

Without any adjudication on the issue of negligence, it cannot be the case that CentiMark seeks indemnification for its own negligent conduct.  Rather, CentiMark seeks indemnification for the legal fees associated with its defense in the Venerio suit, as the terms and conditions in the 1706209 Work Authorization set forth.  (*See* ECF No. 28-1, p. 18); (ECF No. 34, p. 36).  Therefore, the *Perry-Ruzzi* rule will not preclude CentiMark's ability to seek indemnification should a jury determine that the work performed pursuant to the 1706209 Work Authorization was the factual cause of the injuries litigated in the Venerio suit.

## IV.   CONCLUSION

For the reasons set forth above, both CentiMark's and TJX's motions for summary judgment (ECF Nos. 30 and 31) will be denied. All asserted claims and counterclaims will proceed to trial. An Order of Court will follow.

BY THE COURT:

WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

12-5-23
Dated

14